**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X

ANDREW MASON,

                      Plaintiff,

        -against-                          Case No.

THE CITY OF NEW YORK,                   **COMPLAINT**
VINCENT N. SCHIRALDI, Individually,
KENNETH STUKES, Individually,          <u>Jury Trial Demanded</u>
JOHN or JANE DOE 1-5, Individually,
JOHN or JANE DOE 6-10, Individually,

                  Defendant.

-------------------------------------------------------------- X

       Plaintiff ANDREW MASON, by and through his attorneys, Leventhal Law Group, P.C. and Hamilton Clarke, LLP, respectfully alleges as follows:

## **PRELIMINARY STATEMENT**

       1.     On October 5, 2021, Plaintiff ANDREW MASON was detained on Rikers Island, where there has been an abject failure to adequately monitor and supervise inmates, including inmates in the housing unit where Plaintiff was held.  Instead, rampant inmate-on-inmate violence has been allowed to permeate Rikers Island.  As a result, Plaintiff was brutally beaten and suffered severe and permanent physical injuries and emotional distress.  His injuries, and his demand to be made whole from those injuries, are the subject of this Complaint.

       2.     The City of New York's deliberate indifference to the unconstitutional conditions at Rikers Island is now such a well-known fact that it is a matter of which the Court

can take judicial notice.[1]  The rampant inmate-on-inmate violence on Rikers Island is so widespread and persistent that it constitutes a *de facto* policy of the City of New York.  The City's own Commissioner of the Department of Corrections has called the conditions at Rikers a "humanitarian crisis."

3.      Even though City policymakers have long-known of the unconstitutional conditions at Rikers – from personal observations, prior lawsuits, public reports, governmental investigations, and the City's own internal investigations – City policymakers have utterly failed to take the necessary steps to remedy the conditions at Rikers.

4.      Defendants include the City of New York; individual correction officers who failed to adequately monitor and supervise inmates in Plaintiff's housing unit; the supervisors who knew that the corrections officers were not adequately monitoring and supervising the inmates in Plaintiff's housing unit; and the Commissioner and Chief of the City's Department of Corrections, who approved of and ratified the policies which permitted the officers and supervisors' failures to provide adequate monitoring and supervision of inmates.

5.      As a result of the Defendants' conduct and deliberate inaction, inmate-on-inmate violence is rampant in the City's jails, and inmates – including Plaintiff – have suffered serious physical injuries, threats of violence, mental anguish, and emotional distress.

## JURISDICTION AND VENUE

6.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

7.      Venue is properly laid in the Southern District of New York, because the acts

---

[1] The public reports of the court-appointed *Nunez* monitor lay out in detail the problems at Rikers. The Court can take judicial notice of those reports, which are publicly available at http://tillidgroup.com/projects/nunez-monitorship/#reports, and Plaintiff hereby incorporates the facts conveyed in those reports into his Complaint.

and omissions described herein occurred in the jurisdiction of the Southern District of New York.

## JURY DEMAND

8.     Plaintiff demands a trial by jury in this action on each and every one of his claims for which a jury trial is legally available.

## PARTIES

9.     Plaintiff ANDREW MASON is, and was at all times relevant to this action, a resident of Kings County in the State of New York.

10.     Defendant the City of New York (the CITY) is a municipal entity created and authorized under the laws of the State of New York. The CITY is authorized by law to maintain a municipal jail system and it does so.

11.     The New York City Department of Correction (DOC) is the CITY agency that is responsible for the operation and maintenance of the CITY's jails, including the facilities located on Rikers Island, which is within the geographic confines of Bronx County. The City assumes the risks incidental to the maintenance of Rikers Island and the employment of its staff and correction officers.

12.     One of the facilities on Rikers Island is the Eric M. Taylor Center (EMTC).  DOC, through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those designed to prevent inmate-on-inmate violence by providing for the care and supervision of inmates by DOC officers and supervisors.

13.     At all relevant times hereinafter mentioned, Defendant VINCENT N. SCHIRALDI was the Commissioner of the DOC and as such was Defendant CITY's supervising policymaker with regard to the care and control of inmates held in DOC jails.  SCHIRALDI acted in the capacity of agent, servant, and employee of Defendant CITY, and within the scope of his

employment as such.  Upon information and belief, SCHIRALDI was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel, including the Defendants referenced herein.

14.     As Commissioner, SCHIRALDI also is responsible for the care, custody, and control of all inmates housed in DOC jails.  As Commissioner, SCHIRALDI is provided, on a daily basis, with reports of inmate-on-inmate violence, allegations of inadequate supervision of inmates, and other breaches of security in DOC jails.  In addition, at all relevant times, Defendant SCHIRALDI was and is responsible for enforcing the rules of the DOC and for ensuring that DOC personnel obey the laws of the United States and of the State of New York.

15.     SCHIRALDI is sued in his individual capacity.

16.     At all relevant times hereinafter mentioned, Defendant KENNETH STUKES was DOC's Chief of Department, acting in the capacity of agent, servant, and employee of Defendant CITY, and within the scope of his employment as such.  As Chief of Department, STUKES was the highest-ranking uniformed member of the DOC, and was responsible for the supervision, oversight, and discipline of the uniformed security staff in all DOC jails.  He was also responsible for the care, custody, and control of all inmates in DOC jails.  Defendant STUKES is sued in his individual capacity.

17.     At all relevant times hereinafter mentioned, Defendant JOHN or JANE DOE 1 through 5 were the supervisors, including captains, wardens and assistant wardens of EMTC, acting in the capacity of agent, servant, and employee of Defendant CITY, and within the scope of their employment as such.  As supervisors, JOHN or JANE DOE 1 through 5 were responsible for the care, custody, and control of all inmates, as well as the supervision of all staff, in EMTC.

Defendant JOHN or JANE DOE 1 through 5 are sued in their individual capacities.

18.    At all relevant times hereinafter mentioned, Defendant JOHN or JANE DOE 6 through 10 were duly sworn DOC officers, acting in the capacity of agent, servant, and employee of Defendant CITY, and within the scope of their employment as such.  JOHN or JANE DOE 6 through 10 were corrections officers assigned to monitor and supervise the inmates in Plaintiff's housing unit on October 5, 2021.  Defendants JOHN or JANE DOE 6 through 10 are sued in their individual capacities.

19.    At all relevant times hereinafter mentioned, the aforementioned defendants acted under the color of state law.

## FACTS

20.    On October 5, 2021, Plaintiff ANDREW MASON was detained in the CITY's custody in EMTC on Rikers Island.

21.    On October 5, 2021, the City housed Plaintiff in the 1 upper dormitory housing unit in EMTC with approximately 40 other inmates.

22.    Inmates housed in the 1 upper housing unit in EMTC were confined but not secured in individual jail cells.

23.    Each inmate was assigned one of approximately 40 bunks in a large, open room.

24.    In addition to the bunk room, 1-upper contains a communal bathroom and a day room, equipped with a television, tables, and benches.

25.    Each 1-upper unit includes two observation posts: an "A-post" and a "B-post."

26.    Upon information and belief, as per DOC directives, rules, regulations, procedures, training, customs, and/or practices, DOC officers are assigned to either the "A-post" or the "B-post" in order to monitor, supervise, and maintain control of the inmates.

27.    The A-post is an enclosed observation post separated from the housing area by walls and partitions.

28.    The A-post, commonly referred to as "the bubble," is located adjacent to the 1-upper day room.

29.    The A-post provides a view of the 1-upper day room and a limited view into the bunk area and communal bathroom.

30.    The ability of an officer assigned to the A-post to observe and interact with inmates is limited.

31.    An officer assigned to the A-post does not have the uninterrupted ability to communicate orally with and respond to each prisoner in the housing unit unaided by an electronic or other artificial amplifying device.

32.    Additionally, an officer assigned to the A-post does not have the uninterrupted ability to view each prisoner in the housing unit.

33.    As a result of these physical, audio and visual impairments, an officer assigned to the A-post cannot immediately respond to emergency situations.

34.    Unlike the A-post, the B-post is located within the housing area.

35.    An officer assigned to the B-post has full access to all inmates and areas of 1-upper, can communicate and respond to each prisoner in 1-upper unaided by an electronic or amplifying device, and can immediately respond to emergency situations.

36.    New York State Minimum Standards, codified in Title 9 of the New York Codes, Rules and Regulations (N.Y.C.R.R.), govern the management of county correctional facilities, such as EMTC.

37.    According to 9 N.Y.C.R.R. § 7003.3(a), "Active supervision shall be maintained

in all facility housing areas, including multiple occupancy housing units, when any prisoners are confined in such areas but not secured in their individual housing units."

38.    9 N.Y.C.R.R. § 7003.2(c) defines "active supervision" conjunctively, as follows:

(c) Active supervision shall mean the immediate availability to prisoners of facility staff responsible for the care and custody of such prisoners which shall include:

(1) uninterrupted ability to communicate orally with and respond to each prisoner unaided by any electronic or other artificial amplifying device; and

(2) the conducting of supervisory visits at 30-minute intervals; [sic]

(3) the ability of staff to immediately respond to emergency situations; and

(4) in any facility housing area in which more than 20 inmates are housed, the continuous occupation of a security post within such housing area.

39.    On October 5, 2021, Plaintiff was imprisoned with approximately 40 other inmates in the 1 upper housing unit of EMTC, on Rikers Island, in the City of East Elmhurst, County of Queens, and State of New York.

40.    Prior to 9:00 a.m. on October 5, 2021, the Defendants abandoned the active supervision observation post within the 1 upper housing unit of EMTC.

41.    At approximately 9:00 a.m., while there was no active supervision from the observation post in the 1 upper housing unit of EMTC, Plaintiff was brutally assaulted in the 1 upper housing unit bathroom in EMTC, by three inmates who were also detained to the 1 upper housing unit.

42.    At that time, the inmates threatened Plaintiff in the bathroom, demanding that Plaintiff give them his food; and when Plaintiff refused, the inmates assaulted him, repeatedly punching and striking him in the head, face and upper body.

43.    Upon information and belief, Defendants John Doe 1 through 5 did nothing to prevent, intervene or stop the assault.  The Defendants entered the housing unit after Plaintiff lost

consciousness and the inmates stopped beating him.

44.     As a result of the Defendants' failure to adequately monitor and supervise inmates in the 1 upper housing unit, Plaintiff was violently assaulted and suffered serious injuries, including bilateral jaw fractures and permanent nerve damage.

45.     The brutal and prolonged assault of Plaintiff occurred as a result of the intentional, reckless, negligent, and/or deliberate indifference of the Defendants.

46.     Defendants owed a duty of care to safeguard inmates, including Plaintiff, from attacks by fellow inmates.

47.     The duty of care required Defendants to safeguard Plaintiff, a non-violent inmate, from the violent inmates who threatened and attacked him.

48.     The duty of care required Defendants to separate Plaintiff, a non-violent inmate, from the violent inmates who threatened and assaulted him.

49.     The duty of care required Defendants to provide adequate supervision to inmates in the 1 upper housing unit to prevent inmate-on-inmate violence.

50.     The purpose of supervising inmates is to prevent inmate-on-inmate assaults.

51.     It was reasonably foreseeable to the Defendants that failing to provide adequate supervision to inmates in the 1 upper housing unit created an inherently dangerous environment for inmates and would likely result in inmate-on-inmate violence and threats of violence and thereby cause serious physical injuries and emotional distress to inmates.

52.     The purpose of providing active supervising inmates is to prevent inmate-on-inmate assaults.

53.     The purpose of separating violent inmates from non-violent inmates is to safeguard the health and safety of non-violent inmates from threats and assaults by violent

inmates.

54.    It was reasonably foreseeable to the Defendants that failing to separate violent inmates from non-violent inmates and failing to provide active supervision to inmates in the 1 upper housing unit created an inherently dangerous environment for inmates, including for Plaintiff, and would likely result in inmate-on-inmate violence and threats of violence and thereby cause serious physical injuries and emotional distress to Plaintiff.

55.    Accordingly, Defendants breached their duty of care to safeguard Plaintiff from violence and threats of violence by violent inmates.

56.    Plaintiff's injuries were a direct result of the Defendants' intentional, reckless, negligent, and/or deliberate indifference, inadequate and/or deliberate failure to adequately supervise inmates in the 1 upper housing unit.

57.    The aforesaid event is not an isolated incident.  Defendant CITY is aware (from inspection reports provided to the CITY by the New York City Board of Correction, the New York State Commission on Correction, lawsuits, prior incidents, notices of claim, media coverage, investigations conducted by and complaints filed with the City's Inspector General's Office and Department of Investigation, and from information gathered by DOC officials) that many DOC officers including, upon information and belief, the individual Defendant officers and supervisors, are insufficiently trained regarding the proper supervision and protection of inmates, fail to separate violent inmates from non-violent inmates, and/or that DOC officers in DOC jails engage in a custom or practice of abandoning their assigned posts within dormitory-style housing areas in which 20 more inmates are in custody.

58.    On, before and after October 5, 2021, Defendants SCHIRALDI, STUKES and JOHN or JANE DOES 1 through 10, were aware that the failure to separate violent inmates from

non-violent inmates and the failure to provide adequate supervision within dormitory-style housing areas in which more than 20 inmates were housed resulted in violence and threats of violence amongst inmates.

59.    On, before and after October 5, 2021, Defendants SCHIRALDI, STUKES and JOHN or JANE DOES 1 through 10, were aware that the failure to separate violent inmates from non-violent inmates and the failure to provide adequate supervision within dormitory-style housing areas in which more than 20 inmates were housed resulted in serious physical injuries and emotional distress to inmates.

60.    On, before and after October 5, 2021, Defendants SCHIRALDI, STUKES and JOHN or JANE DOES 1 through 10, approved of and ratified the conduct of officers under their command who failed to separate violent inmates from non-violent inmates and who failed to provide adequate supervision by abandoning the active supervision post.

61.    Defendants knew, had reason to know, and/or should have known that unmanned active supervision observation posts in dormitory-style housing areas and the failure to separate violent inmates from non-violent inmates, creates an inherently dangerous environment for inmates and results in inmate-on-inmate violence and assaults, and threats of violence to non-violent inmates.

62.    Defendant CITY is further aware (from lawsuits, prior incidents, including arrests and convictions of correction officers, notices of claims, media coverage, investigations conducted by and complaints filed with the City's Inspector General's Office and Department of Investigation, and from intelligence gathered by Department of Correction officials) that inmate-on-inmate violence is rampant in DOC jails and has resulted in scores of serious injuries to inmates as well as mental anguish and emotional distress to inmates who are subjected to threats

of violence and fear being subjected to violence.

63.    For example, in the "Correction" chapter of the 2017 Preliminary Mayor's Management Report, the DOC reported "[s]tabbings and slashings increased by 21 percent while inmate fights increased by 27 percent compared to the same time period last year."  Preliminary Mayor's Management Report at 74 (Feb. 2017), *available at* http://www1.nyc.gov/assets/operations/downloads/pdf/pmmr2017/doc.pdf).

64.    Defendant CITY is further aware (from lawsuits, prior incidents, including arrests and convictions of correction officers, notices of claims, media coverage, investigations conducted by and complaints filed with the City's Inspector General's Office and Department of Investigation, and from intelligence gathered by Department of Correction officials) that many DOC officers, including the Defendants, often allow and, at times, engage inmates to fight and assault other inmates.

65.    For example, on April 8, 2008, *The Village Voice* published an article entitled "*Rikers Island Fight Club,"* which detailed how "guards at Rikers Island [are] encouraging inmates to attack other inmates to enforce rules…" (http://www.villagevoice.com/news/rikers-island-fight-club-6388180).

66.    Moreover, on August 14, 2013, The Village Voice published an article entitled "Rikers Fight Club: Correction Staff Let Melee Go For Over An Hour Without Stopping It; Four Inmates Badly Slashed," which detailed a fight amongst inmates that "was allowed by correction staff to continue for over an hour without intervention." (http://www.villagevoice.com/news/rikers-fight-club-correction-staff-let-melee-go-for-over-an-hour-without-stopping-it-four-inmates-badly-slashed-6720156).

67.    Upon information and belief, in the months and years prior to the brutal assault

11

on Plaintiff, numerous physical altercations occurred amongst inmates in DOC custody as a result of the failure of DOC and its corrections officers and supervisors to actively supervise inmates and to separate violent inmates from non-violent inmates.

68.    Defendant CITY is further aware that the policies, practices, procedures, and/or customs of the DOC and its officers and supervisors as described herein has resulted in a deprivation of the civil rights of inmates in the CITY's custody.  Despite such notice, the CITY and its DOC have failed to take corrective action, which has caused the violation of Plaintiff's civil rights.

69.    All of the aforementioned acts of Defendants, their agents, servants, and employees were carried out under the color of state law.

70.    All of the aforementioned acts deprived Plaintiff of the rights, privileges, and immunities guaranteed under the Eighth and Fourteenth Amendments to the U.S. Constitution, in violation of 42 U.S.C. § 1983.

71.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as DOC officers and supervisors, with the entire actual and/or apparent authority attendant thereto.

72.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as DOC officers, pursuant to the policies, customs, usages, practices, procedures, and/or rules of the CITY and the DOC, all under the supervision of ranking officers of said department.

73.    As a result of the foregoing, Plaintiff sustained, *inter alia*, severe physical and psychological injuries, pain and suffering, emotional distress, and deprivation of his constitutional rights.

74.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## COMPLIANCE WITH NOTICE OF CLAIM REQUIREMENTS

75.     Within ninety (90) days after the claims herein accrued, Plaintiff duly served upon, presented to, and filed with the Defendant CITY OF NEW YORK, a Notice of Claim setting forth all facts and information required under the General Municipal Law 50-e.

76.     The CITY OF NEW YORK has refused to make an adjustment or payment thereof and more than thirty (30) days have elapsed since the presentation of such claim as aforesaid.

77.     This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

78.     Plaintiffs have complied with all conditions precedent to maintaining the instant action.

79.     This action falls within one or more of the exceptions as outlined in C.P.L.R. § 1602.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Deliberate Indifference to Safety/Failure to Protect under 42 U.S.C. § 1983)

80.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

81.     Defendants knew of and disregarded the excessive risk of harm to Plaintiff's health and safety by failing to separate violent inmates from non-violent inmates and failing to adequately supervise Plaintiff and other inmates at Rikers Island, including in EMTC's 1-upper

dormitory housing unit.

82.    As a result of the aforementioned conduct and inaction of Defendants, Plaintiff was severely injured by another inmate and sustained serious physical injuries.

83.    In committing the acts and omissions complained of herein, the individual Defendants acted under color of state law to deprive Plaintiff of constitutionally protected rights under the Eighth and Fourteenth Amendments of the United States Constitution.

84.    As a direct and proximate result of the individual Defendants' deprivation of Plaintiff's constitutional rights, Plaintiff suffered the injuries and damages set forth above.

85.    The unlawful conduct and inaction of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

86.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Cruel and Unusual Punishment under 42 U.S.C. § 1983)

87.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

88.    By their policies and practices described herein, Defendants have deprived Plaintiff of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution

89.    The policy and practice of failing to separate violent inmates from non-violent inmates and failing to adequately supervise and monitor inmates constitutes a serious deprivation of at least one basic human need, including but not limited to, physical and mental health.

90.     Plaintiff was detained under conditions that exposed them to a substantial risk of serious harm.

91.     Defendants knew the conditions imposed by failing to separate violent inmates from non-violent inmates and failing to adequately supervise and monitor inmates created a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to correct it.

92.     Increased risk of violence due to inadequate supervision and housing violent inmates with non-violent inmates in dormitory housing imposes both psychological and physical pain and suffering.

93.     The policy and practice of inadequate supervision housing violent inmates with non-violent inmates in dormitory housing imposed disproportionate punishment on Plaintiff by exposing Plaintiff to substantial risk of harm.

94.     The policies and practices complained of herein have been implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacity.

95.     Defendants have been and are aware of all of the substantial risk of harm complained of herein and have condoned or been deliberately indifferent to such conduct.

96.     Plaintiff has been harmed by Defendants' conduct as alleged herein, and Defendants' conduct was a substantial factor in causing Plaintiff's harm.

97.     Defendants knew of and disregarded the excessive risk of harm to Plaintiff's health and safety by failing to adequately supervise Plaintiff and other inmates in EMTC 1 upper dormitory housing unit and by housing violent inmates with non-violent inmates, including Plaintiff.

98.     As a result of the aforementioned conduct and inaction of Defendants, Plaintiff was severely injured by other inmates and sustained serious physical injuries.

99.     In committing the acts and omissions complained of herein, the individual Defendants acted under color of state law to deprive Plaintiff of certain constitutionally protected rights under the Eighth and Fourteenth Amendments to the United States Constitution.

100.     As a direct and proximate result of the individual Defendants' deprivation of Plaintiff's constitutional rights, Plaintiff suffered the injuries and damages set forth above.

101.     The unlawful conduct and inaction of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

102.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

### AS AND FOR A THIRD CAUSE OF ACTION
(Supervisory Liability under 42 U.S.C. § 1983)

103.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

104.     The supervisory Defendants personally caused Plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees who failed to properly supervise inmates in their care, custody, and control, including Plaintiff, and by housing violent inmates with non-violent inmates, including Plaintiff.

105.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual

16

Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs, and disbursements of this action.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Municipal Liability under 42 U.S.C. § 1983)

106.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

107.    The aforementioned customs, policies, usages, practices, procedures, and/or rules of the CITY OF NEW YORK and DOC included, but were not limited to, failing to protect inmates when Defendants knew of and disregarded the excessive risk of harm to an inmate's health and safety posed by failing to supervise inmates in dormitory-style housing areas, abandoning observation posts, housing violent inmates with non-violent inmates, including Plaintiff, and by failing to intervene in inmate-on-inmate assaults, and/or sanctioning inmate-on-inmate assaults.

108.    In addition, the CITY engaged in a policy, custom and/or practice of inadequate screening, hiring, retaining, training and supervising its employees that was the moving force behind the violation of Plaintiff's rights as described herein.

109.    As a result of the failure of the CITY to properly recruit, screen, train, discipline, and supervise its officers, including the individual Defendants, Defendant CITY has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

110.    The foregoing customs, policies, usages, practices, procedures and rules of the CITY and DOC constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiff.

111.    The foregoing customs, policies, usages, practices, procedures and rules of the

CITY OF NEW YORK and DOC were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

112.    The foregoing customs, policies, usages, practices, procedures and rules of the CITY and DOC were the moving force behind the Constitutional violations suffered by Plaintiff as alleged herein.

113.    As a result of the foregoing customs, policies, usages, practices, procedures, and rules of the CITY and DOC, Plaintiff was injured as set forth herein.  Plaintiff specifically was brutally assaulted and suffered serious and permanent physical injuries.

114.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff's constitutional rights.

115.    All of the foregoing acts and inaction by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, rights protected by the Eighth and Fourteenth Amendments to the United States Constitution.

116.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

### AS AND FOR A FIFTH CAUSE OF ACTION
<u>(Violations of the Constitution of the State of New York)</u>

117.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

118.    Defendants subjected Plaintiff to the foregoing acts and omissions without due process of law, thereby depriving Plaintiff of rights, privileges, and immunities guaranteed by Article 1 §§ 5 and 6 of the New York State Constitution.

119.    As a direct and proximate result of Defendants' deprivations of Plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, Plaintiff suffered the injuries and damages set forth above.

120.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Negligence under the laws of the State of New York)

121.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

122.    Plaintiff's injuries herein were caused by the carelessness, recklessness, and negligence of the Defendants, who were acting in the scope of their employment when they engaged in the wrongful conduct described herein and breached the duty of care they owed Plaintiff.

123.    Plaintiff was subjected to an unacceptable and unconstitutional risk of harm as a result of Defendants' negligence.

124.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

### AS AND FOR A SEVENTH CAUSE OF ACTION
(Gross Negligence under the laws of the State of New York)

125.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in

foregoing paragraphs with the same force and effect as if fully set forth herein.

126.    Plaintiff's injuries herein were caused by the gross negligence of the Defendant CITY and its employees and agents, who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described herein.

127.    Plaintiff was subjected to an unacceptable and unconstitutional risk of harm as a result of Defendants' negligence.

**128.**    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
(Negligent Screening, Hiring, and Retention under the laws of the State of New York)

129.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein

130.    Upon information and belief, Defendant City failed to use reasonable care in the screening, hiring, and retention of the aforesaid Defendants.

131.    Defendant City knew or should have known in the exercise of reasonable care, the propensities of the individual Defendants to engage in the wrongful conduct heretofore alleged in the Complaint.

132.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**AS AND FOR A NINTH CAUSE OF ACTION**
(Negligent Training and Supervision under the laws of the State of New York)

133.    Plaintiff repeats, reiterates and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

134.    Upon information and belief, the Defendant CITY failed to use reasonable care in the training and supervision of the aforesaid Defendants.

**135.**    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**AS AND FOR A TENTH CAUSE OF ACTION**
(*Respondeat Superior* liability under the laws of the State of New York)

136.    Plaintiff repeats, reiterates and realleges each and every allegation contained in foregoing paragraphs with the same force and effect as if fully set forth herein.

137.    Defendant CITY is vicariously liable for the acts of its employees and agents who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described herein.

138.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**WHEREFORE**, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

(A)     full and fair compensatory damages in an amount to be determined by a jury;

(B)     punitive damages against the individual Defendants in an amount to be determined by a jury;

(C)     reasonable attorney's fees and the costs and disbursements of this action,

(D)     interest; and

(E)     such other and further relief as appears just and proper.

Dated: January 3, 2023
New York, New York

By:        /s/ _____
Jason Leventhal
Leventhal Law Group, P.C.
101 Avenue of the Americas, 9th Floor
New York, New York 10013
(718) 556-9600

Dated: January 3, 2023
        New York, New York

By:        /s/ _____
Joshua S. Moskovitz
Hamilton Clarke, LLP
48 Wall Street, Suite 1100
New York, New York 10005
(212) 729-0952

*Attorneys for Plaintiff*