

**MEMO ENDORSED**

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**THOMAS LAI**
*Senior Counsel*
E-mail:tlai@law.nyc.gov
Phone: (212) 356-2336
Fax: (212) 356-3509

November 7, 2023

**VIA ECF and Email: Failla_NYSDChambers@nysd.uscourts.gov**
Honorable Katherine Polk Failla
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *Andrew Mason v. City of New York et al.*, 23-CV-00029 (KPF)

Your Honor:

    I am a Senior Counsel in the Office of the Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and attorney for Defendants in the above referenced matter. Pursuant to Local Civil Rule 6.3, Defendants move to reconsider the Court's October 24, 2023 Orders denying Defendants' October 11, 2023 Motion to Bifurcate *Monell* and granting Plaintiff's October 3, 2023 Motion to Compel.

    By way of background, Plaintiff brings this action, pursuant to 42 U.S.C. §1983, alleging, *inter alia*, that Defendants[1] were deliberately indifferent to his safety and failed to protect him when Plaintiff was attacked by inmates while in the City's custody on Riker's Island. As a result, Plaintiff alleges he suffered a bilateral jaw fracture and permanent nerve damage. On October 3, 2023, Plaintiff moved to compel, *inter alia*, discovery concerning other alleged incidents of failure to supervise on the basis that Plaintiff brought claims against defendants Vincent Schirladi and Kenneth Stukes in their individual capacity that overlap with Plaintiff's *Monell* claims. (*See* Docket Entry ("D.E.") No. 37). On October 11, 2023, Defendants both opposed Plaintiff's motion to compel and in a separate application, moved to bifurcate *Monell*. (D.E. Nos. 42, 43). On October 24, 2023, Your Honor held a conference on those motions, during which time Defendants' motion to bifurcate was denied and Plaintiff's motion to compel was granted.[2]

---

[1] In addition to the City, former Commissioner Schiraldi and former Chief of Department Stukes, Plaintiff recently amended the complaint to add individual defendants Frances Espejo and Cenia Figueroa who, upon information and belief, were assigned to the 1 Upper Dormitory on October 5, 2021. To date, upon information and belief and according to the Court docket, defendants Espejo and Figueroa have not been served and are not currently represented by this Officer, however, Plaintiff has noticed these individuals for depositions.

[2] To date, a written Order has not been issued regarding Your Honor's rulings from the October 24th conference.

Specifically, Defendants were directed to respond to certain document requests made by Plaintiff within thirty days[3], by November 23, 2023. At that time, the Court also extended discovery an additional thirty days.[4]

Pursuant to Rule 6.3 of the Local Civil Rules for this District, a party may move for reconsideration or reargument of a court's order on a motion "'only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Ferguson v. City of New York*, 2018 U.S. Dist. LEXIS 127049, at *2 (E.D.N.Y. July 30, 2018). "'[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooks—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Id.* Whether to grant or deny a motion for reconsideration is within the sound discretion of the district court. *Premium Sports Inc. v. Connell*, 2012 U.S. Dist. LEXIS 97982, at *1 (S.D.N.Y. June 11, 2012).

### *The Court Should Reconsider, and Grant, Defendants' Motion to Bifurcate Monell.*

As an initial matter, Defendants move to reconsider the Court's denial of their motion to bifurcate *Monell* on the grounds that because it is extremely unlikely that Plaintiff's underlying claim will survive summary judgment and therefore, Plaintiff's Monell claim cannot survive, the requirement that Defendants produce extremely voluminous *Monell* discovery should be reversed. As noted above, Plaintiff claims that Defendants purportedly failed to protect him from an attack by other inmates. Plaintiff, however, readily admits that the incident occurred in his dorm area's *bathroom*, a place where officers, even if Plaintiff's allegations that DOC was understaffed at the time were true, would not be present due to privacy concerns. (*See* Complaint at ¶¶ 48, 49). Additionally, Plaintiff does not set forth a single allegation that DOC was on notice that Plaintiff and the inmates who attacked him should have been separated or otherwise. (*Id.* at ¶¶ 45-49).

In order to succeed on a §1983 claim for failure to protect from another inmate, Plaintiff must demonstrate that there was a substantial risk of serious harm to which the Defendants were deliberately indifferent, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and that the alleged deprivation was sufficiently serious. In this regard, "sufficiently serious" means "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Urgent conditions can be shown by evidence that an inmate had a previous altercation with his attacker and has complained about the incident or has requested separation from the attacker. *Urena v. Fischer*, 2010 U.S. Dist. LEXIS 52446, at *22 (N.D.N.Y. Apr. 16, 2010) (*citing Desulma v. City of New York*, 2001 U.S. Dist. LEXIS 9678, at *21 (S.D.N.Y. Jul. 6, 2001)) (holding that because plaintiff did not have any previous encounters with the attacker-inmate, the plaintiff could not establish the objective prong of this claim). Like *Urena*, there is no evidence nor any allegations that Plaintiff had ever complained about, or put

---

[3] Defendants were directed to produce document in response to document request numbers 22, 24, 25, 26, 27, 28, 29, 30, and 31, as identified in Docket Entry No. 37-1, for a period of 5 years prior to the incident.

[4] It is unclear to Defendants at this time if discovery was extended an additional thirty days from Defendants' time to comply with Your Honor's order directing Defendants' to provide *Monell* discovery or thirty days from the previous discovery closure date of November 21, 2023.

DOC on notice of, any incidents or issues with the inmates who attacked him. Additionally, Courts routinely deny deliberate indifference claims based upon surprise attacks, which is what happened in the instant matter. *See Zimmerman v. Macomber*, 2001 U.S. Dist. LEXIS 12499, at *15 (S.D.N.Y. Aug. 21, 2001) (*citing Farmer*, 511 U.S. at 842-43 (dismissing complaint where officers unaware of earlier attacks on inmate at a prior prison)); *Grant v. Burroughs*, 2000 U.S. Dist. LEXIS 12917, at *9 (S.D.N.Y. Sept. 8, 2000).

Finally, most significantly, Courts in this district have also held that a correction officer's mere absence from his post when an inmate attack erupts (as is how Plaintiff claims the incident at issue here unraveled) cannot sustain a failure to protect claim.[5] *See Zimmerman v. Macomber*, 2001 WL 946383, at *6 (S.D.N.Y. Aug. 21, 2001) (noting on summary judgment that correction officer abandoning his post does not raise a constitutional question); *Grant v. Burroughs*, 2000 WL 1277592, at *3 (S.D.N.Y. Sept. 8, 2000) ("Even if [a] [correction officer] was away from his assigned post, his negligent supervision of the area is not sufficient for liability under § 1983.") (citation omitted); *see also Fair v. Weiburg*, 2006 WL 2801999 (S.D.N.Y. Sept. 28, 2006) (holding that the officer's absence from assigned station was inadequate to demonstrate deliberate indifference). In *Fair*, the court found that "the mere failure to post a guard does not constitute a constitutional injury which can be relieved via a section 1983 action, even where the presence of a guard would have prevented the attack." *Id.* (citation omitted); *see also Jaipersaud v. A.R.D.C. Bldg. # C-74*, 1996 WL 1086521, at *3 (E.D.N.Y. June 19, 1996) (holding that failure to post a guard in mess hall where fight broke out did not rise to the level of deliberate indifference).

The allegations set forth in Plaintiff's First Amended Complaint demonstrate that given the authority, Plaintiff's failure to protect/deliberate indifference claim cannot survive summary judgment. Requiring Defendants to engage in extremely voluminous, time consuming, and, as explained below, significantly overbroad *Monell* discovery at this juncture, is a waste of resources and time, a clear fishing expedition and an exercise in attempting to generate unnecessary fees. Additionally, Plaintiff is clearly attempting to exploit DOC by way of current goings on in unrelated matter, *Nunez v. City of New York*, 11-cv-5845 (LTS) (S.D.N.Y.). To that end, in addition to the initial entirely overbroad discovery demands Plaintiff served on June 8, 2023, which Defendants will separately address below, on October 13, 2023, Plaintiff served Defendants with 79 Requests for Admission ("RFAs").[6] The first 29 of those RFAs all relate to the *Nunez* matter and monitor reports which were issued as a part of the related consent decree in that case. The 29 requests, in essence, require Defendants to admit certain information contained in the publicly filed reports as well as confirm the accuracy and truth of that information.[7]

---

[5] Plaintiff claims that DOC's purported failure to appropriately staff the dormitory where Plaintiff was housed is a violation of N.Y. Comp. Codes R. & Regs. tit. 9, § 7003.3. A violation of state law, however, does not give rise to a constitutional violation. *See Mayo v. Cty. of Albany*, No. 07-cv-823 (GLS-DRH), 2009 U.S. Dist. LEXIS 28899, at *8 (N.D.N.Y. Apr. 3, 2009) (holding that § 1983 does not provide a remedy for failure to meet state law requirements).

[6] Due to the Court's page limitations with respect to this motion, Defendants cannot address all of their objections to these RFAs, however, Defendants intend to raise these objections and seek appropriate relief in a separate motion at or before when the responses are due on November 13, 2023, or in the alternative, request an extension to respond.

[7] For example, RFA 11 states "Admit that the Twelfth *Nunez* Report found that there were 353 stabbing/slashing events at Rikers between January 1, 2021 and October 31, 2021" and RFA 12 requests Defendants to "Admit that

Additionally, there are several requests that require Defendants to admit facts related to deaths in DOC custody for certain periods of time– something that is clearly not relevant to the claims in this case as this is not a death in custody case. Clearly, these RFAs seek information that is clearly not relevant to the claims at issue in this case and amounts to nothing more than a fishing expedition; it only further demonstrates the tenuousness of Plaintiff's purported *Monell* claim and their possible attempt to locate new clients.

As Your Honor is aware, to succeed on a *Monell* claim, Plaintiff must first establish that a municipal agent committed an underlying constitutional violation. *See e.g., Simpson v. Town of Warwick Police Dept.*, 159 F. Supp. 3d 419, 434 (S.D.N.Y. 2016) (*citing City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 650 (S.D.N.Y. 2015). Without an underlying violation, "there can be no municipal liability under § 1983[,]" and the claim must be dismissed. *Simpson*, 159 F. Supp. at 434 (*citing City of Los Angeles*, 475 U.S. at 799). In addition, Plaintiff must also prove "…the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries . . . ." *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted); and (3) "…a causal connection – an affirmative link – between the policy and the deprivation of her constitutional rights." *Id*. Here, given the volume of Plaintiffs' *Monell* discovery requests and facts regarding the underlying incident, which are unlikely to support a viable constitutional violation, the requirement that Defendants produce all this *Monell* discovery is likely for naught. Bifurcation of *Monell* plainly weighs in Defendants' favor here. Moreover, recently in another Southern District case before the Honorable Paul A. Engelmayer, which includes multiple claims against the DOC including claims regarding understaffing and mismanagement of staff, the City's motion to bifurcate *Monell* was granted. *See Andrew Moss v. City of New York et al.*, 23-CV-1632 at D.E. 18, 29.

***At a Minimum, The Court Should Reconsider The Scope of Discovery Defendants Are Required to Produce.***

As an initial matter, the undersigned apologizes for not clearly and succinctly addressing all of the objections to Plaintiff's *Monell* discovery demands at the October 24th conference. Following the conference and having additional time to reflect on the Court's Order, the undersigned now realizes that Defendants will not be able to comply with that Order due to the extremely broad scope of the requested discovery. In brief, the document requests to which Defendants are required to respond are overbroad, burdensome, entirely exceed the scope of Plaintiff's claims, are otherwise inappropriate and not relevant considering the claims in this case, and should, at a minimum, be narrowly tailored to align with the facts alleged in this matter.

For example, pursuant to the Court's Order, Request 24 requires Defendants to produce copies of Notices of Claim ("NOC") filed with the City where "dangerous conditions of confinement or security issues at EMTC or other Rikers Island facilities are alleged", from October 5, 2018 through to the present. First, "dangerous conditions of confinement" and "security issues" are not defined, the request seeks information from facilities beyond where

---

the statistics provided in Request for Admission #11 was true and accurate at the time it was made." Of note, there is no allegation in this case that Plaintiff was stabbed or slashed by the inmates on the incident date.

Plaintiff was incarcerated[8], and the request is not narrowly tailored to seek information that is relevant to the allegations in this case – for example, such as data for incidents similar in nature to the one alleged in the complaint (a surprise inmate-on-inmate violent attack that occurred in a dormitory bathroom at EMTC). Moreover, having conferred with the Comptroller's Office, upon information and belief, while there were over 13,000 NOCs filed between October 5, 2018 and November 1, 2023 that identify DOC claims and have an occurrence location on Rikers Island, the Comptroller's Office does not capture the claims to the level of granularity that Plaintiff requests, i.e., allegations of dangerous conditions of confinement or security. Accordingly, there is no way for Defendants to produce responsive information to this request beyond reviewing and assessing each filed NOC.[9] Clearly, this discovery sought is not proportional to the needs in this case.

Plaintiff requests similar information via request numbers 25 and 26 for all complaints filed in state and/or federal court, and those "received from any source (including, but not limited to, the Legal Aid Society, the New York City Board of Correction, the Office of the Inspector General)" regarding the same "dangerous conditions of confinement or security issues at EMTC or other Rikers Island facilities." Again, these requests are objectionable on the same grounds as above, for instance, upon information and belief, the Law Department does not capture lawsuits to the level of granularity that Plaintiff requests, which is in addition to the fact that some information sought is publicly available, i.e. federal and state complaints, and therefore equally accessible to Plaintiff, and that some of the documents requested are not in defendants' possession, custody or control as they are third party's documents (i.e. the Legal Aid Society).

In Request 27 and Request 28, Plaintiff requests information pertaining to "any instance" where DOC employees or officers were "mandated to work overtime" or "required to work a different post than his or her assigned position" for the entire facility of EMTC which is overly burdensome and well beyond Plaintiff's claims pertaining to the incident which occurred on October 5, 2018 in the 1 Upper Dormitory bathroom. Further, in regards to Request 28, upon information and belief, it is unclear at this time if DOC is able to locate these records and any apparent search would be costly and time consuming to comply with this overly broad request.

In regards to Plaintiff's Request 29 and Request 30 for "any safety study and/or risk analysis" regarding staffing policies and inmate assignments, to the extent these requests appear to correspond with information readily and publicly available in the *Nunez* monitor reports, said information is readily available to Plaintiff and a URL link to same was included in Plaintiff's complaint. In addition, Request 30 appears to reference information corresponding with policies that, upon information and belief, the DOC is still attempting to locate and Defendants anticipate producing in response to Request 22 for DOC policies, which may render this request moot.

Finally, in regards to Request no. 31, the DOC is continuing to investigate the manner in which filed grievances may be searched, however, as written, Defendants construe this request as requesting *all* grievances filed by any DOC employee from October 5, 2018 to present, which is

---

[8] At the time of the attack, Plaintiff was in custody at EMTC on Rikers Island.
[9] It would be similarly arduous to respond even if the request was for NOCs narrowed to claims related to inmate-on-inmate assaults, or issues in the bathroom, because the level of granularity is also not maintained in the regular course of business.

clearly inappropriate and not narrowly tailored to seek information that is relevant to the allegations in this case.

Accordingly, Defendants respectfully request that the Court reconsider and grant Defendants' motion to bifurcate *Monell*, or in the alternative, reconsider the scope of discovery Defendants are required to produce.

Respectfully submitted,

*Thomas Lai s/*
Thomas Lai
Senior Counsel
Special Federal Litigation Division

To: **VIA ECF**
Joshua Samuel Moskovitz
Jason Louis Leventhal
Adam Ivan Strychaluk
Calla Ketchens
*Attorneys for Plaintiff*

```
The Court is in receipt of Defendants' motion for reconsideration of the
Court's October 24, 2023 Order.  (Dkt. #54).  The motion for
reconsideration is DENIED.  The Court, however, appreciates this
opportunity to clarify the scope of Monell discovery contemplated in
this matter.  It is the Court's understanding that the alleged issue for
which Monell discovery was warranted was the policy regarding housing
violent and non-violent inmates together.  Plaintiff should narrowly
tailor the discovery requests to conform to the Court's specification.

In accordance with the Court's October 24, 2023 Order, the post-fact
conference for this case scheduled for December 13, 2023, is hereby
ADJOURNED to January 12, 2024, at 2:30 p.m.

The Clerk of the Court is directed to terminate the pending motion at
docket number 54.

Dated:      November 17, 2023          SO ORDERED.
            New York, New York
```

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE